May it please this honorable court, my name is David Basham. I represent the appellant and the defendant at the trial of this case Theodore Mandy Jose. I plan on intending to just address the first issue that we have briefed and if the court wishes to ask me questions on the second issue and the third issue be happy to respond. In the reference to the misdemeanor conviction that was used in this trial, my first point that I think is critical to the analysis of this review is that this motion was thoroughly explored and fully litigated prior to trial in this case. The problem with that counsel is that the district court said it was willing to revisit the issue depending on what developed. So I have a concern that this issue was not preserved because when the matter resurfaced there was no preservation of the issue. I would respectfully ask the court to review the supplement to the excerpt supplied by the government which has pages 26 through 30 which dealt with the pretrial motion in this case and dealt with exactly the language. I fully understand counsel that there was a motion in limine to prevent introduction of evidence regarding the tribal court proceedings. I'm with you there. The problem is when the defendant testified about having been in custody, in tribal custody, the court ruled at that point that the door had been opened and there was no objection raised at that point. We feel that this issue had been previously raised in written pleadings and it had been argued. And we felt the judge made a definite decision on that. How can it be definite if he said I'll be willing to revisit this if circumstances occur that make me reconsider my view? What case authority do you have to support your argument that if the judge reserves the ruling for future events that it's still preserved in a motion in limine? I don't specifically have a case to respond to this court, but I would say that the reason that the judge reserved his ruling was that there was no evidence, there was no foundation of a statement in this case. He said that this was not going to be used substantively. He said it was not going to be used for impeachment. He said that he even made a kind of a 403 analysis and he said even if we did admit it, I've still got problems regarding that we're going to usurp the jury's function here. Counselor, did you try this case? I did, Your Honor. Can you explain why when the judge said the door's been opened, you didn't object and say, you know, we went through all of this in a motion in limine and now that motion's being violated. Why wouldn't you do that? Maybe that's a mistake. Knowing this judge and knowing the court proceedings, I had filed written pleadings. I had argued this motion as if I had filed pleadings before this honorable court and had a ruling on it. I felt that that ruling was definite and I felt that the judge went contrary to that ruling. And that's the point. When he went contrary to that ruling, that was the point where you should have jumped up and screamed, you know, we had a ruling on this and now it's being violated. I mean, that's hard for me to understand. Possibly the only thing I would add is that the judge had reserved his, he said I'm finding without prejudice unless the government can show me documents, that would serve as a basis for whatever we're making reference here to. And he said we would, prior to trial, that these documents would be given to him if you will examine the pleadings. This wasn't served on any party. There were no documents. There's a box checked regarding plea of guilty in the tribal court. And for those reasons, I felt that this decision had not been litigated. If the court finds- You thought that the judge had ruled to grant your motion in limine unless the government were to come up with some documentary evidence that he had pleaded guilty? That was his decision as I understood it on the record. He said there's just nothing to look at here. And he said unless the government could come in with a transcript or some context in which this was given. And he says, so- All the more reason why you should be on your feet objecting when the question is put if there's no document that's been submitted. If the court is inclined to make that determination, I would respectfully submit that even under a plain air analysis, that this is so erroneous and so potentially prejudicial in this proceeding that I'm still entitled to relief. Why is it erroneous that he pleaded guilty to the misdemeanor? The error, I believe, Your Honor, would be in using this conviction against this defendant when he takes the stand in this case. He took the stand, and what he said was, out of nowhere, he said, I've done ten months in tribal and ten months in CCA. And that was what the judge determined opened the door. Well, but the prior, the admission that he, his plea of guilty wasn't introduced for the purpose of impeaching his testimony. It was introduced to show that he admitted he did the stabbing. Or I'm missing something. That's- It was an admission of a party litigant, right? Under 801 D2. Yes, that would be where it would come in. And even at that, in the tribal court, he never offered self-defense as a defense, did he? He did not, Your Honor. And it came out in tribal court. He was not represented. He was counseled with by the prosecutor. He had no idea of, you know, the concept of self-defense and how it might apply. And he claimed to have been misinformed. And that was part of the problem here in what we asserted on the record was the foundation for this statement and that it should not be used in this case. Counsel, in light of all the evidence that was presented in trial, what's your argument? I mean, how can you establish that the error affected the outcome of the case? This trial basically dealt with the testimony of the defendant versus the testimony of the victim and his girlfriend. The other witnesses in the case and called at trial were basically collateral. They observed things that occurred after this incident. And it was basically the defendant's word against the word of the victim and his girlfriend. And there were some contradictions between the girlfriend and the victim as to prior altercations and what kind of weapons were used and this and that. So basically, it fell down to the credibility of the defendant, the accused, and the victim in the case. So I believe that's why this evidence was so prejudicial and why it should not have been admitted. We also, along the same lines, we basically feel that the witness did nothing on the stand to open it up by merely saying, I did 10 months in tribal. And I don't believe that that opened the door to this prior conviction. But the time to make that point was before the district court judge. May have been, Your Honor. But again, we feel that that had been seriously litigated and set out in the record by written motion and verbal motion. And at the time, I felt that the objection did not need to be made. Again, I believe after looking at the cases, the Ant case and the Deneclaw case and the Osazawa case, and another case that's cited in government's pleading is, and I probably butchered the pronunciation of it, but it's the Sinjini case. Sinjini case basically goes somewhat against me. But again, in that case, it appears that they had a plea agreement. They had a context in which a statement was made and how that statement might be used to impeach a witness. And in our case, we have basically a box check that says guilty. Thank you, counsel. Your time has expired. Thank you, Your Honor. We'll hear from the governor. Good morning, Your Honor. May it please the Court. I'm Chris Cabanillas from the District of Arizona. This Court should affirm the defendant's conviction and sentence. I see that we haven't talked about the sentence or the Miranda issue, so I'm going to go ahead and just address the tribal court admission issue. And the tribal court guilty plea was admissible as impeachment, to impeach the defendant after he testified that he acted in self-defense. You know, I think that this question about whether he opened the door on the tribal custody issue, if he had never uttered those words, the cross-examination would still have been proper under Dent Claw and to Sine Ginni. Let me see if I understand you. Yeah. Your position is the government asked him, have you been convicted? I'm sorry. Say again. Impeaching? Yes. But if he had been convicted of a misdemeanor, how could you impeach him with a misdemeanor? It wasn't the impeaching with a misdemeanor. I think you're thinking of a prior conviction. This is an inconsistent statement that he made. That's different. Mm-hmm. All right. And a prior inconsistent statement, and that's talked about in Dent Claw. That's why I was going to talk about Dent Claw. Because if you take a look at Dent Claw, this is not a 608 issue. This is not a 609 issue. This is a prior inconsistent statement. Once the defendant got done testifying that he acted in self-defense, it was then germane for the government to raise that in a prior guilt, tribal court guilty plea on this same matter. Again, not an unrelated. This is the same matter. He had admitted, and you'll see the government's questions really. He had admitted what? That he had assaulted Mr. Marks. And if you take a look at the government's answering brief at page 37. But how do we know what he admitted? How do we know what he admitted? Because he said, so understand. See, this is a case where the government asked him. You know, if you look at the questions in on page 37 of the government's brief, and I quote what happened. The government said, the reason you're in tribal jail is because you had been charged with an offense in tribal court arising out of this assault between you and Mr. Marks. Isn't that true? And then he says, no, at the time I was picked up on a bench warrant. And the government says, but isn't it true that you were serving time in tribal court? You admitted to assaulting Mr. Marks. Isn't that right? Yes or no? And he says, yes. So the government now has established what his admission was, and that was absolutely admissible under both Dennett Claw and Ticini-Ginni. Again, I think that's one of those cases, hard to pronounce. In Ticini-Ginni, this court permitted the government to impeach. And the big thing in here is impeachment. That's why Ant has no applicability. We're talking about impeachment of a prior inconsistent statement. And in Ticini-Ginni, this court permitted the government, it was actually another District of Arizona case, to impeach a defendant with a tribal guilty plea when he had testified inconsistently. But what is the prior inconsistent statement? The prior inconsistent statement can't be the testimony at trial. What is the prior inconsistent statement that you are using for impeachment? It can't be his testimony at the trial, because that's not prior. No. That is what triggers the admissibility of the prior inconsistent statement. But what is the prior inconsistent statement? The prior inconsistent statement is that he admitted, he pled guilty, he admitted guilt in assaulting Mr. Marks. And that's the statement. And that's all that the government. In tribal? Yes, in tribal. You're talking about his guilty plea in the tribal court? Correct. That's the prior statement? Yes. Okay. And because he had testified. Before we leave that, what case authority do you have to support your argument that a guilty plea is a prior inconsistent statement? Deneclaw, Tenth Circuit, and Ticini-Ginni. Okay. So we don't, you don't have anything in the, in the, so you. Yes. Ticini-Ginni. Ticini-Ginni says that a guilty plea, a bare guilty plea is a prior inconsistent statement. Well, you know, the court, if you look at Ticini-Ginni. Could you answer my question, please? Yes, ma'am. A bare guilty plea. In Ticini-Ginni, it's not clear if he used the prior, the plea agreement on both occasions. This court, the defendant was testified apparently twice. There were two trials. And I'm looking at. Well, that case, Ticini-Ginni says a plea agreement can be a prior inconsistent statement. So that's why I'm asking you. A bare guilty plea is different than a plea agreement. So I'm asking you, are you saying that a bare guilty plea constitutes a prior inconsistent statement? Yes. Okay. And this case does not support your argument because it talks about a plea agreement, which contains many statements. But a guilty plea. What case do you have that says a bare, unadorned, unvarnished guilty plea is a prior inconsistent statement? I honestly am trying to answer, Your Honor, I swear. If you look at Ticini-Ginni, that language that you're applying, it says, we hold that plea agreements like statements made in violation of Moran and Al. Plea agreements, I know that's what Your Honor is looking at. The prior page, though, it's unclear whether plea agreement was used at the first trial. Because it says, on cross-examination, he was asked in both trials by way of impeachment if he had pled guilty to sexual misconduct with the same child. And I'm looking at page 1287 of the decision. So it says, again, let me repeat, on cross-examination, he was asked in both trials by way of impeachment if he had pled guilty to sexual misconduct with the same child when he was before the tribal court. Right. The district court allowed the question to be asked. Counsel. Oh, I'm sorry. But it also talks about the plea agreement. The plea agreement is memorialized in a document which bears both Ticini-Ginni's and his lawyer's signatures. So you can't divorce that. The plea agreement was pivotal in this case. Separate and apart from the cross-examination that you're talking about. That was just setting out the facts. But to me, the holding of this case centers around the plea agreement. You're correct. The holding does center around the plea agreement. And I'm not, I guess I just wanted to raise that because I couldn't tell from the factual statement whether or not when they state that part about the district court allowing the question to be asked and answered, whether the plea agreement was used. I couldn't tell. But you are absolutely correct that the holding in Ticini-Ginni on the next page, we hold that plea agreements, like statements in violation of Miranda, may be received in evidence for impeachment, even if tribal courts do not follow Rule 11. Now, I would submit to you that the combination of this case and the Dent Claw case are enough to show that there was no error here. But even if this court had any reservations about it at all, there was no plain error here. And that's very important, too, because we had a situation where the defendant apparently cooked his own goose by taking the stand, testifying thoroughly inconsistently with how he had told Officer Rosales after arrest things occurred. He also had apparently this new story about the knife, which was thoroughly unbelievable, a jury could find. And we have testimony from the victim, the girlfriend, Hernando, Christopher, all of whom were damaging against the defendant. So, again, I would say that this was a kind of a credibility contest between the defendant and the victim and the victim's girlfriend. I think that he, unfortunately, counsel is narrowing the field of vision. I think that when it comes down to it, you have a defendant being inconsistent with himself, even if you were to not even consider this. You had the defendant telling Agent Rosales that the victim was unarmed, and then you have at trial that he says he then picked up this knife. There's inconsistencies right and left between what the defendant testified to at trial and what the defendant testified to or what the defendant had said to Agent Rosales. In addition, you have the victim testifying that he was unarmed, he was not the aggressor, and the girlfriend also testifying to that. You have Hernando testifying that, you know, he sees the defendant come over or at one point the defendant is following the victim as the victim's coming to Uncle Hernando's house. You have Christopher saying that the defendant's, you know, or the victim's hand, you have the defendant not being able to explain how it is this individual victim supposedly act in self-defense when he had been stabbed in the back five times. So I would submit to you there is overwhelming evidence of this defendant's guilt apart from this. And, again, I would submit to you that it was entirely appropriate to admit that tribal court guilty plea, again, under the Dent Claw case and married with this Ticini-Geni case. The defendant also cites an Osazawa case in his reply brief. I just wanted to just briefly note that case dealt with 608, it dealt with 609, and we were talking about in this case impeachment because he testified that he acted in self-defense, which is a little different. And also in Osazawa, this case, this Court said that the defendant did not testify about the underlying facts of or create a false impression about that prior act. And, of course, here he did. So and the Ant decision, of course, is inapposite for the reasons cited by the Tenth Circuit in Dent Claw. Simply because that case dealt with substantive evidence of guilt, it did not deal with impeachment. So, again, Ant is an apposite as well. So for those reasons, we would respectfully submit that there was no error in this case, and certainly there was no plain error. Judge Rawlinson accurately stated that the defendant did not preserve his objection at the time of trial, and that that's why this is also reviewed for plain error, and there was none and no violation of substantial rights. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Bea